IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

IN RE INTEREST OF VINCENT W.

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

IN RE INTEREST OF VINCENT W., JR., A CHILD UNDER 18 YEARS OF AGE.

STATE OF NEBRASKA, APPELLEE,

V.

VINCENT W., SR., APPELLANT, AND ELIZABETH M. AND DEANA K., APPELLEES.

Filed August 8, 2023.    No. A-23-035.

Appeal from the Separate Juvenile Court of Douglas County: CANDICE J. NOVAK, Judge. Affirmed.

Matthew P. Saathoff and Jacob A. Acers, of Saathoff Law Group, P.C., L.L.O., for appellant.

Michael McInerney, Deputy Douglas County Attorney, and Abigail Brown, Senior Certified Law Student, for appellee State of Nebraska.

PIRTLE, Chief Judge, and MOORE and RIEDMANN, Judges.

RIEDMANN, Judge.

## I. INTRODUCTION

Vincent W., Sr. (Vincent Sr.), appeals from the order of the separate juvenile court of Douglas County that terminated his parental rights to his son, Vincent W., Jr. (Vincent Jr.). Vincent Jr.'s mother is not involved in this appeal and will only be discussed as necessary. On appeal, Vincent Sr. argues that the juvenile court erred in finding clear and convincing evidence of substantial and continuous or repeated neglect and refusal to provide care for Vincent Jr., erred in finding clear and convincing evidence that reasonable efforts to preserve and reunify the family failed to correct the conditions causing the separation, and erred in determining that the termination

- 1 -

of his parental rights was in the best interests of Vincent Jr. Upon our de novo review, we affirm the order of the juvenile court.

## II. BACKGROUND

Vincent Sr. is the father of Vincent Jr., born in February 2019. Vincent Jr. has never been placed with Vincent Sr. Vincent Jr. was removed from his mother's care in 2019 following a domestic violence incident between her and Vincent Sr. Vincent Jr. was adjudicated and Vincent Sr. was ordered to undergo an initial diagnostic interview (IDI) and to participate in and successfully complete a domestic violence course and provide proof of completion to the Nebraska Department of Health and Human Services (DHHS). Case management was originally undertaken by entities contracting with DHHS, but by the time of the termination hearing, the current caseworker was employed by DHHS. We will refer to both the contracting agency and DHHS as "DHHS" throughout this opinion.

Vincent Sr. was originally ordered to undergo an IDI and complete a domestic violence education program. By March 2020, he was also ordered to: participate in and successfully complete dual diagnosis therapy; undergo a psychological evaluation with parenting assessment as arranged by DHHS and sign a release of information so DHHS could access it; sign releases of information as requested by DHHS; have no contact with Vincent Jr.'s mother; maintain contact with all case professionals; abstain from the use or possession of illegal drugs and alcohol; submit to random drug and alcohol testing in any form designated by DHHS and sign a release of information so DHHS could access the results; and be allowed reasonable rights of agency-supervised visitation. A September order added that Vincent Sr. must obtain and maintain a legal source of income and obtain and maintain safe and adequate housing. Vincent Sr. was later ordered to not be involved in criminal behavior that would cause incarceration.

On September 15, 2021, the State filed a motion to terminate Vincent Sr.'s parental rights to Vincent Jr. based on Neb. Rev. Stat. § 43-292(2) (Reissue 2016), that Vincent Sr. had substantially and continuously or repeatedly neglected and refused to give Vincent Jr. or a sibling necessary parental care and protection, specifically that Vincent Sr. had another child under the jurisdiction of the juvenile court and had failed to reunify with that child; § 43-292(6) that reasonable efforts had failed to correct the conditions leading to adjudication, specifically that Vincent Sr. failed to participate in and successfully complete a domestic violence education course and provide proof of completion, failed to maintain contact with case professionals, failed to undergo a psychological evaluation to include a parenting assessment, failed to obtain and maintain a legal source of income and provide proof, failed to consistently undergo random, frequent, and observed drug testing, failed to sign releases of information upon request, and failed to consistently participate in supervised visitation; and § 43-292(7) that Vincent Jr. had been in out-of-home placement for 15 of the most recent 22 months.

The hearing on the motion for termination of parental rights began on January 4, 2022, and was thereafter held on various dates in March, April, May, and September. Several witnesses, including Vincent Jr.'s foster mother, employees of drug testing agencies, visitation supervision workers, psychologists, therapists, and DHHS caseworkers testified. The following evidence was adduced at the termination hearing.

### 1. Completed Orders

At the time of the termination hearing, Vincent Sr. had completed the IDI and had participated in dual diagnosis therapy. Vincent Sr. underwent a psychological evaluation, although he did not complete this until after the motion to terminate his parental rights was filed. He also participated, to a degree, in agency supervised visitation.

### 2. Uncompleted Orders

#### (a) Domestic Violence Education Program

Vincent Sr. was ordered to complete a domestic violence education program. From November 2019 to April 2020, Vincent Sr. did not provide proof that he had completed such a program, nor did any program provider ever provide proof that a class had been completed.

In the summer of 2020, a caseworker offered information to Vincent Sr. about domestic violence classes that were available, but Vincent Sr. told her he had completed one already and was not going to do it again. However, neither Vincent Sr. nor the program coordinator could provide verification that Vincent Sr. had completed the course.

In the summer of 2021, the current caseworker made a referral for a domestic violence program, which Vincent Sr. began in August. Although Vincent Sr. participated in the program for a period of time, he was later unsuccessfully discharged from that program.

#### (b) Contact Between Parents

Despite both parents being ordered not to have contact with one another, they continued to do so. Each parent blamed the other for initiating the contact. In the summer of 2020, there were charges pending against Vincent Sr. for making terroristic threats against Vincent Jr.'s mother, but the charges were dismissed in September. Regardless of who was responsible for initiating contact, this was concerning to the current caseworker because both parents had been ordered by the juvenile court not to engage with each other and yet continued to do so.

#### (c) Contact With Case Professionals

Vincent Sr. was ordered to maintain contact with all case professionals, but he failed to do so. The caseworker supervising the case from November 2019 to April 2020 had only two in-person contacts with Vincent Sr.; the first was because the caseworker happened to see him at a family team meeting for the mother and the second time was at court. The caseworker was unable to schedule a family team meeting with Vincent Sr. throughout her time on the case. She would ask Vincent Sr. to set up a family team meeting, and he would say he would get some dates and get back to her but never followed through with it. She made attempts to have contact with Vincent Sr. monthly but did not have conversations with him about his court orders because she was not able to meet with him face-to-face.

The current caseworker was assigned to the family in May 2020. Vincent Sr. told her that he would contact her when he needed something, but otherwise he did not see the need to speak her. The caseworker did not have consistent monthly contact with Vincent Sr. because he did not want to have monthly contact. She was able to have only one meeting with him in his home in August 2020. The DHHS expectation for caseworkers was for a minimum of one contact a month with a parent, and if the worker did not have contact, they were required to document attempts at

contact. Prior to Covid-19, contacts had to be a face-to-face visit; however, after Covid-19, phone contacts would suffice. Attempts at contact could include a text message, phone call, leaving messages, or sending an email. Since taking over the case in May 2020, there were only 3 months during which the current caseworker had no contact or no attempts at contact with Vincent Sr.

There were never any team meetings with the current caseworker because Vincent Sr. refused them. Initially she offered the meetings and Vincent Sr. stated he did not want to attend; when she offered them later in the case, Vincent Sr. said he would get back to her with dates, but never did. There had been a family team meeting scheduled prior to one of the termination hearing dates, but Vincent Sr. did not attend.

### (d) Psychological Evaluation

In October 2020, the current caseworker arranged for Vincent Sr. to complete a psychological evaluation in January 2021. Vincent Sr. did not voice concern about transportation to the appointment until a couple of days before the appointment, at which time he said he could not attend because he lacked transportation. When the caseworker offered transportation, Vincent Sr. said the appointment was scheduled for too early in the morning. Consequently, Vincent Sr. did not attend the appointment.

After the missed appointment, Vincent Sr. told the caseworker he wanted to find his own person to complete the evaluation. The caseworker told him that was acceptable, but that she needed to present collateral information to the evaluator, who also needed to be pre-approved by DHHS. Vincent Sr. was uncooperative with those arrangements and refused to sign a release, stating that he would send a copy of the results.

In May 2021, the caseworker made another referral for a psychological evaluation, and an appointment was scheduled for August. There were at least four follow-up appointments that were scheduled to occur, two being in the fall and at least two in 2022. Vincent Sr. did sign a release of information for the caseworker. The caseworker had concerns about the length of time it took to complete the evaluation process, because without the results there was no progress, and no new services were offered.

The psychologist conducting the evaluation did not find that Vincent Sr. was psychologically unfit to parent. She confirmed that it took a lot longer to complete this evaluation than was typical. The first meeting for the evaluation was in August 2021, and the final assessments were not completed until February 2022. The psychologist stated that 6 months to follow through was a long time, and she noted that Vincent Sr. had mentioned that a termination of parental rights had been filed which seemed to possibly be a motivating factor.

### (e) Legal Source of Income

Vincent Sr. was ordered to provide proof of a legal source of income. The caseworker asked Vincent Sr. to provide pay stubs or information about his income. He informed her that he "worked under the table" with a relative. The caseworker thought Vincent Sr. said he worked construction and reported raising and selling puppies as a source of income. However, he provided no proof that this was his source of income. Vincent Sr. stated he did not get a paycheck so he could not provide proof that he was working, but that he had enough income to provide for Vincent Jr.

After the motion for termination of parental rights was filed in 2021, the caseworker was provided with copies of Vincent Sr.'s income tax filings. The income tax filings showed that Vincent Sr. had income, but not whether it was monthly, and that would have helped determine if he had the monthly resources to care for a child. The caseworker was concerned because if employment was "under the table" it would typically not be stable, and she also questioned the legality if a person is not reporting their income. She was concerned that if income was unstable and inconsistent there would be no guarantee that Vincent Sr. could meet Vincent Jr.'s needs each month.

### (f) Drug Testing

Vincent Sr. had an open case with DHHS regarding another child, and through that case he was ordered to participate in random, frequent drug testing. When Covid-19 started, the testing company wanted to switch Vincent Sr. to sweat patches due to safety concerns, but Vincent Sr. was not willing to do that. The case worker found Vincent Sr.'s refusal to wear a sweat patch concerning because he had been passing the urinalysis drug tests.

Vincent Sr. was referred to an agency for drug testing in July 2021, and testing was to begin twice a week in August. Although Vincent Sr.'s phone number was listed incorrectly on the July referral, he had previously drug tested through the agency and its employee testified that he spoke with Vincent Sr. about restarting the drug tests. Vincent Sr. refused to come in and test, stating that he did not have transportation. He was advised to contact DHHS for assistance, but never did.

The current caseworker stated that different referrals were made for drug testing, but they were both closed out as unsuccessful. The first referral was made sometime over the summer and fall months of 2020, but Vincent Sr. refused to test because he was not using drugs and did not feel the need to test. The second referral was made sometime in 2021 but because Vincent Sr. stated his only availability was after 7 p.m. on Sundays, he was unsuccessfully discharged. The current caseworker could not recall Vincent Sr. ever participating in drug testing during her time on the case.

### (g) Releases of Information

Vincent Sr. was ordered to sign releases of information for different programs he was involved in, but he refused. Instead, he offered to obtain the information himself and provide it to the caseworker, which was unacceptable.

### (h) Supervised Visitation

A visitation supervisor for Vincent Sr.'s visits with Vincent Jr. stated that the number of weekly visits had not changed since visits began in June 2019, and that visits were always fully supervised. Most, though not all, of the visits occurred at Vincent Sr.'s home; visits initially occurred in the community, with some occurring at the home of Vincent Sr.'s mother, but Vincent Sr.'s home was approved for visits. Visits were usually about 2 hours long.

During 2021, Vincent Sr. was offered a total of 92 visits, but cancelled approximately 35 of them. Some of the cancellations occurred when Vincent Sr. contracted Covid-19, and others occurred because there were car issues or other health issues. Only 8 to 10 of the visits were cancelled due to Covid-19, so approximately 25 were cancelled for other reasons. No

documentation of a positive Covid-19 test was ever provided, though Vincent Sr. did provide a negative test.

There were no concerns when visits did occur. Vincent Sr. appropriately provided for Vincent Jr.'s needs during visits. Vincent Sr. inquired about increasing the frequency of his visits, but he was told that consistency with the current schedule was a prerequisite. The current caseworker noted that Vincent Sr. missed 3 weeks of visits in January 2022. Vincent Sr. told her that two of the missed visits were to complete the psychological evaluation, but those visits occurred on a Friday, when the psychologist's office was not open.

Vincent Sr. never provided Vincent Jr.'s foster mother with money, food, cards, or notes. The foster mother stated that on days when Vincent Jr. had visits with Vincent Sr., he came home from day care with aggressive behavior or outbursts. There was one incident when the visitation worker came to pick up Vincent Jr. for a visit with Vincent Sr., and Vincent Jr. "ran around screaming crying, he was running under the table, and he was refusing to go."

### (i) Vincent Jr.'s Sibling

Vincent Sr. has another child, who had been in foster care for approximately 106 months at the time of the termination hearing. He is the subject of a separate juvenile case. The case manager for that case testified that Vincent Sr. has been inconsistent in both drug testing and visitation. She expressed the same concerns with setting up meetings with Vincent Sr. as those expressed by the caseworker for Vincent Jr.

### 3. SUMMATION OF PROGRESS

The current caseworker stated Vincent Sr. had made little to no progress toward reunification since May 2020. It was not until late summer 2021 that Vincent Sr. decided he wanted to engage in services, and almost everything occurred after the motion to terminate was filed. The current caseworker stated that Vincent Jr. was not able to be placed with Vincent Sr. at the time of the termination hearing because she did not see Vincent Sr. as having corrected the issues that brought him into the juvenile court. She felt that Vincent Sr. had not shown a lot of consistency or change in behavior, and that he tended to parent Vincent Jr. when it was convenient for him, and a full-time parent cannot pick and choose when to parent. She opined that Vincent Sr.'s parental rights should be terminated.

### 4. JUVENILE COURT'S ORDER

The juvenile court terminated Vincent Sr.'s parental rights. It found that the State had proven every allegation made in the motion for termination of parental rights. The juvenile court acknowledged that Vincent Sr. had completed a psychological evaluation (although it erroneously stated it did not include a parenting assessment), but that he did not complete it until approximately 23 months after it had been ordered, and after the hearing on the motion for termination of parental rights had commenced. It stated that Vincent Sr. had been offered reasonable efforts but had chosen not to cooperate with case professionals and court ordered services in order to regain custody of Vincent Jr. It noted that Vincent Jr. had been in out-of-home placement for approximately 31 months. The juvenile court found Vincent Jr. was within the meaning of § 43-292(2), (6), and (7), and that it was in his best interests to terminate Vincent Sr.'s parental rights. Vincent Sr. appeals.

## III. ASSIGNMENTS OF ERROR

Vincent Sr. assigns that the juvenile court erred by: (1) finding the existence of clear and convincing evidence of substantial and continuous or repeated neglect and refusal to provide care for Vincent Jr.; (2) finding the existence of clear and convincing evidence that reasonable efforts to preserve and reunify the family failed to correct the conditions causing the separation; and (3) determining that termination of the parental rights of Vincent Sr. was in the best interests of Vincent Jr.

## IV. STANDARD OF REVIEW

An appellate court reviews juvenile cases de novo on the record and reaches its conclusions independently of the findings made by the juvenile court below. *In re Interest of Mateo L. et al.*, 309 Neb. 565, 961 N.W.2d 516 (2021). However, when the evidence is in conflict, an appellate court may consider and give weight to the fact that the juvenile court observed the witnesses and accepted one version of the facts over another. *Id.*

## V. ANALYSIS

### 1. STATUTORY GROUNDS

Vincent Sr. argues the juvenile court erred in finding the existence of clear and convincing evidence of substantial and continuous or repeated neglect and refusal to provide care for Vincent Jr., and that the juvenile court erred in finding the existence of clear and convincing evidence that reasonable efforts to preserve and reunify the family failed to correct the conditions causing the separation. In Nebraska, the grounds for terminating parental rights are codified in § 43-292. That statute contains 11 separate subsections, any one of which can serve as the basis for termination when coupled with evidence that termination is in the best interests of the child. *In re Interest of Mateo L. et al., supra.* It is the State's burden to show by clear and convincing evidence both that one of the statutory bases enumerated in § 43-292 exists and that termination is in the child's best interests. *In re Interest of Mateo L. et al., supra.*

Section 43-292(7) allows for termination when the juvenile has been in out-of-home placement for 15 or more months of the most recent 22 months. This subsection operates mechanically and, unlike the other subsections of the statute, does not require the State to adduce evidence of any specific fault of the parent. *In re Interest of Mateo L. et al., supra.* In other words, if the 15-out-of-22 formula is met, § 43-292(7) is met. *In re Interest of Mateo L. et al., supra.*

While Vincent Sr. argues the juvenile court erred in finding that the State met its burden to show by clear and convincing evidence a violation of § 43-292(2) and (6), we need not consider these arguments on appeal because we find the State proved by clear and convincing evidence that Vincent Jr. had been in out-of-home placement for 15 of the most recent 22 months. See *In re Interest of Mateo L. et al., supra* (where one statutory basis has been established, appellate court need not consider sufficiency of evidence concerning State's other statutory bases for termination).

### 2. BEST INTERESTS

Vincent Sr. assigns the juvenile court erred in determining that the termination of his parental rights was in the best interests of Vincent Jr. Whereas statutory grounds are based on a parent's past conduct, the best interests inquiry focuses on the future well-being of the child. *In re*

*Interest of Mateo L. et al., supra*. The Nebraska Supreme Court has stated that the Due Process Clause of the U.S. Constitution would be offended if a State were to attempt to force the breakup of a natural family, over the objections of the parents and their children, without some showing of unfitness. See *In re Interest of Mateo L. et al.*, 309 Neb. 565, 961 N.W.2d 516 (2021). As such, we apply a rebuttable presumption that it is in the child's best interests to maintain a relationship with his or her parent. *Id*. That presumption can only be overcome by a showing that the parent is either unfit to perform the duties imposed by the relationship or has forfeited that right. *Id*.

Although the term "unfitness" is not expressly stated in § 43-292, it derives from the fault and neglect subsections of that statute and from an assessment of the child's best interests. *In re Interest of Mateo L. et al., supra*. In this context, parental unfitness means a personal deficiency or incapacity that has prevented, or will probably prevent, performance of a reasonable parental obligation in child rearing and that has caused, or probably will result in, detriment to the child's well-being. *Id*. The best interests and parental unfitness analyses require separate, fact-intensive inquiries, but each examines essentially the same underlying facts. *Id*.

Throughout this case, Vincent Sr. repeatedly refused to engage with case professionals and with the court ordered services that would place him in a position to safely parent Vincent Jr. We note that Vincent Sr. has been involved in a juvenile court case regarding another child for the past eight years. Here, while Vincent Sr. completed a few of the juvenile court's orders, this progress was too little and too late.

Vincent Sr. obtained an IDI, participated in dual diagnosis therapy, agency supervised visitation, and obtained a psychological evaluation with a parenting assessment. However, the evaluation was not obtained until after the motion to terminate was filed and was not even completed until after the termination hearing had started. While Vincent Sr. participated in visitation, he did so inconsistently. Visits never moved beyond supervised, and while Vincent Sr. requested more visits, he was informed they could not increase until he showed more consistency with the visits he was given. He failed to do so.

Vincent Sr. failed to provide any proof that he had completed a domestic violence education program. While we understand from the record that there was some confusion as to whether a certain program qualified, Vincent Sr. did not provide any proof that he had completed that program. Regardless of whether it was a qualifying program, there is no evidence Vincent Sr. finished it. Vincent Sr. was participating in a domestic violence education program toward the beginning of the termination hearings but had been unsuccessfully discharged from it by the final hearing date.

Vincent Sr. refused to meet with caseworkers. Family team meetings were not held because Vincent Sr. refused to schedule them. He eventually told caseworkers he would get back to them with dates, but never did. He told the current caseworker when she first took over the case that he would contact her when he needed something, but otherwise he saw no need to speak with her. Vincent Sr. would not always sign releases when requested, saying he could get DHHS workers what was needed. He also did not participate in drug testing. While there were no positive drug tests, this is because there were practically no tests post Covid-19. Vincent Sr. simply refused to comply with the court ordered drug and alcohol testing. Vincent Sr. failed to provide proof of a legal source of income. While we understand that self-employed individuals may not receive a monthly pay stub, and that Vincent Sr. did provide his tax returns, he also informed the caseworker

that he "worked under the table." The psychologist who performed the psychological exam and parenting assessment noted in her February 2022 addendum that Vincent Sr. struggled with "finding/keeping a legal source of income."

Vincent Sr. argues that the only testimony regarding Vincent Jr.'s best interests came from the current caseworker, who he claims received no training from DHHS or her previous employer on best interests or when termination is appropriate. However, the caseworker testified that she underwent a 7-week, 40 hours per week training in 2016 from a previous employer where she held essentially the same position as at DHHS. Further, the caseworker was required to obtain 24 hours of training each year. In 2021, the caseworker completed a training that addressed the best interests of minor children. Vincent Sr.'s argument that she had no training on this topic is refuted by the record.

Vincent Sr. likens his case to *In re Interest of Aaron D.*, 269 Neb. 249, 691 N.W.2d 164 (2005), in which the only witness the State presented at the termination hearing was the caseworker. The Supreme Court noted that much of the caseworker's testimony was based on hearsay and that while the rules of evidence did not apply to juvenile proceedings, due process required the court to consider the type of evidence offered to determine the weight to be given. Here, the State presented the testimony of the caseworker, who testified to her interactions with Vincent Sr., such as when he told her he saw no need to speak with her unless he needed something, that he had already completed a domestic violence course and would not be doing so again even though he had no proof that he had completed it, and that he would not attend his first psychological evaluation because the appointment was too early in the morning. But the State did not rely solely on the caseworker's testimony. The State also presented the testimony of the caseworker in Vincent Sr.'s other open juvenile case, the testimony of employees of the drug testing agency, the visitation supervision agency, Vincent Jr.'s foster mother, and psychologists. We have reviewed and considered all this evidence in arriving at our decision.

There were barriers to reunification in this case. However, the barriers were of Vincent Sr.'s own making. Much of the progress that he did make came after the State filed the motion to terminate his parental rights. While he may love Vincent Jr. and desire to be a parent to him, Vincent Sr. did not utilize the resources offered to put him in a position to safely parent Vincent Jr. As noted by the juvenile court in its order, Vincent Jr. has been in out-of-home placement since he was approximately three months old. He needs, and deserves, permanency. Vincent Sr. has not shown that he is willing to take the necessary steps to provide that permanency for his child. We find that he is unfit, and that termination of his parental rights is in Vincent Jr.'s best interests. The juvenile court did not err in terminating Vincent Sr.'s parental rights.

## VI. CONCLUSION

We find the juvenile court did not err in finding that the State proved by clear and convincing evidence that Vincent Jr. had been in out-of-home placement for 15 of the most recent 22 months and did not err in concluding that termination of Vincent Sr.'s parental rights was in Vincent Jr.'s best interests. We affirm the judgment of the juvenile court.

AFFIRMED.